UNITED STATES DISTRICT COURT

DISTRICT OF MAINE

| | |
|---|---|
| JAMES LANTOS, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No. 2:23-cv-00240-LEW |
| | ) |
| EQUIFAX INFORMATION SERVICES, L.L.C., Successor in Interest to Equifax Credit, | ) ) ) |
| | ) |
| EXPERIAN INFORMATION SERVICES, INC., | ) ) |
| | ) |
| TRANS UNION, L.L.C., | ) |
| | ) |
| Defendants. | ) |

## ORDER ON DEFENDANTS' MOTIONS TO DISMISS

Plaintiff James Lantos, pro se, sued the "Big Three" credit reporting agencies, Equifax, Experian, and Trans Union (collectively "Defendants"). Lantos alleges that the Defendants inaccurately reported his charged-off debts, in violation of the Fair Credit Reporting Act and Maine State law. Before the Court are the Defendants' Motions to Dismiss.

For the reasons that follow, the Defendants' motions are GRANTED.

### BACKGROUND

I draw the following facts from Lantos' Amended Complaint (ECF No. 10). These facts are assumed to be true when ruling on the Defendants' motions to dismiss.

When the pandemic began in March 2020, Lantos stopped working as a full-time Uber driver. That summer, he sent letters to various creditors explaining his health issues and requesting forgiveness of his debts. The creditors did not respond, and within a year, Lantos defaulted on many of his debts, which were eventually charged off. In January 2022, Lantos learned that Discover was "marking [his] credit report as 'CO'—but on the credit report it was being marked as 'late payment owed.'" Am. Compl. ¶9. That same month, Lantos contacted Experian, Equifax, and Trans Union to explain that, in his view, his credit reports inaccurately included charged-off debts each month. Each company responded, but they did not change their reporting of Lantos' charged-off debts. As a result, Lantos alleges that his credit score was "kept down artificially" by Defendants' inclusion of his charged-off debts in each month's report. *Id.* ¶18. Thus, Lantos claims that companies are relying "on the bogus credit information provided by credit bureaus" and causing him financial harm. *Id.* ¶19.

In June 2023, Lantos sued the Defendants in this Court.[1] In his amended complaint, Lantos alleges that the Defendants' credit reporting practices violated the Fair Credit Reporting Act and the Maine Unfair Trade Practices Act.[2] Lantos also asserts the following tort-based claims: (1) intentional infliction of emotional distress; (2) negligent

---

[1] Lantos also originally sued Innovis Data Solutions, who filed a Motion to Dismiss (ECF No. 22). In September, the parties settled, so Lantos dismissed his claims against Innovis Data Solutions. Stipulation of Dismissal (ECF No. 40).

[2] Lantos' amended complaint asserts a violation of the "Maine Consumer Protection Act." Am. Compl. at 9. I understand Lantos to be referring to the Maine Unfair Trade Practices Act, 5 M.R.S. § 205-A *et seq*.

infliction of emotional distress; (3) defamation; (4) negligence; and (5) intrusion upon seclusion.  Defendants have filed motions to dismiss.

## DISCUSSION

To avoid dismissal, Lantos must plead in his complaint "a short and plain statement of [each] claim showing that [he] is entitled to relief." Fed. R. Civ. P. 8(a)(2).  The complaint must provide "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  In applying this standard, I accept all factual allegations as true and consider whether the facts, along with the reasonable inferences they permit, describe a plausible, as opposed to merely conceivable, claim. *Ocasio-Hernández v. Fortuño-Burset*, 640 F.3d 1, 12 (1st Cir. 2011); *Sepúlveda–Villarini v. Dep't of Educ. of P.R.*, 628 F.3d 25, 29 (1st Cir. 2010).  I will not accept mere conclusory recitations of legal standards as true. *Medina-Velázquez v. Hernández-Gregorat*, 767 F.3d 103, 108 (1st Cir. 2014).  Plausible "means something more than merely possible," *Schatz v. Republican State Leadership Comm.*, 669 F.3d 50, 55 (1st Cir. 2012), but is "not akin to a 'probability requirement.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 556).  Furthermore, "a well-pleaded complaint may proceed even if it appears 'that a recovery is very remote and unlikely.'" *Twombly*, 550 U.S. at 556 (quoting *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974)).

Defendants have moved to dismiss all of Lantos' claims on the ground that he has failed to state claims upon which relief can be granted.[3] My analysis begins with the heart of the case, the Fair Credit Reporting Act.[4]

## A. Fair Credit Reporting Act

The Fair Credit Reporting Act "seeks to promote 'fair and accurate credit reporting'" through regulating "the consumer reporting agencies that compile and disseminate personal information about consumers." *TransUnion LLC v. Ramirez*, 594 U.S. 413, 418 (2021) (quoting 15 U.S.C. § 1681(a)). Under the Act, when a "consumer notifies" a "consumer reporting agency" that the "completeness or accuracy of any item of information contained in a consumer's file" is disputed, the agency "shall, free of charge, conduct a reasonable reinvestigation to determine whether the disputed information is inaccurate and record the current status of the disputed information, or delete the item from

---

[3] Defendants also moved for dismissal on the ground that Lantos did not properly serve them.  *See* Fed. R. Civ. P. 12(b)(5).  These arguments are now moot because Lantos later correctly served the Defendants.  *See* Fed. R. Civ. P. 4(m).

[4] Experian argues that Lantos' claims should be dismissed because he lumps all of the Defendants together and does not sufficiently allege what Experian did.  Experian's Mot. to Dismiss, ECF No. 25 at 6–7.  Mindful that Lantos filed the complaint pro se, I reject this argument because I understand Lantos to have alleged that all three Defendants produced inaccurate credit reports with his charged-off debts over several months.  *See Rodi v. S. New England Sch. Of L.*, 389 F.3d 5, 13 (1st Cir. 2004) ("[T]he fact that the plaintiff filed the complaint pro se militates in favor of a liberal reading.").  Experian also argues that dismissal is appropriate because Lantos has not alleged that Experian prepared his consumer report for a third party, so Lantos has not suffered a concrete injury and he lacks Article III standing.  Experian's Mot. to Dismiss at 7–8 (ECF No. 25); *see also TransUnion LLC v. Ramirez*, 594 U.S. 413, 434 (2021) (reasoning that "[t]he mere presence of an inaccuracy in an internal credit file, if it is not disclosed to a third party, causes no concrete harm" for Article III standing).  I reject this argument too.  Lantos identifies ten creditors who received his credit reports.  Am. Compl. ¶18(f).  While Lantos does not allege which credit reporting agency provided each creditor with his credit report, he does allege that Experian is one of the four credit reporting companies causing him harm.  *Id.* ¶21.  Thus, I infer that Lantos is alleging that at least one creditor received a credit report from each Defendant, so Lantos has Article III standing.  *See TransUnion LLC*, 594 U.S. at 432.

the file" within 30 days of when the agency received notice. 15 U.S.C. § 1681i(a)(1)(A). The Act confers a "cause of action for consumers to sue and recover damages for certain violations."[5] *TransUnion LLC*, 594 U.S. at 419. To prevail under § 1681i, the plaintiff must make "a showing that the disputed information disclosed by the credit agency was, in fact, inaccurate." *DeAndrade v. Trans Union LLC*, 523 F.3d 61, 67 (1st Cir. 2008). A credit report is inaccurate if it "contained an entry or entries that a jury could find were either false or materially misleading." *McIntyre v. RentGrow, Inc.*, 34 F.4th 87, 96 (1st Cir. 2022) (first citing *Saunders v. Branch Banking & Tr. Co. of Va.*, 526 F.3d 142, 148 (4th Cir. 2008) ("[A] consumer report that contains technically accurate information may be deemed 'inaccurate' if the statement is presented in such a way that it creates a misleading impression."); and then citing *Sepulvado v. CSC Credit Servs., Inc.*, 158 F.3d 890, 895 (5th Cir. 1998) ("A credit entry may be 'inaccurate' within the meaning of the statute either because it is patently incorrect, or because it is misleading in such a way and to such an extent that it can be expected to adversely affect credit decisions."))."[6]

---

[5] *See* 15 U.S.C. § 1681n(a) ("Any person who willfully fails to comply with any requirement imposed under this subchapter with respect to any consumer is liable to that consumer . . . .").

[6] Even though the *McIntyre* Court was interpreting § 1681e(b) when it defined "inaccurate," I apply the *McIntyre* Court's definition of inaccurate when interpreting § 1681i because I see no reason why it should be given a different meaning. *See Mundell v. Acadia Hosp. Corp.*, 92 F.4th 1, 11 (1st Cir. 2024) ("[T]here is a presumption that the same words in the same statute have the same meaning."); *Reading Law: The Interpretation of Legal Texts*, Antonin Scalia & Bryan A. Garner 170 (2012) ("A word or phrase is presumed to bear the same meaning throughout a text; a material variation in terms suggests a variation in meaning.").

The parties disagree as to whether Defendants inaccurately reported Lantos' information.[7] Defendants maintain that their credit reports accurately reflected that Lantos defaulted on debts that were eventually charged off. In response, Lantos argues that Defendants prepared inaccurate credit reports by "reporting the debt as having been charged off for a series of consecutive months."[8] Resp. at 6 (ECF No. 31). In his view, "a charge-off is an event that occurs at a definite point in time" when "a creditor decides to treat a debt as a loss or expense." *Id.* Thus, he argues that "the charge-off (identified by 'CO' in the reports) should have been reported in the payment history portion of the subject trade line for the month of September 2021, and only for September of 2021, since the account was charged off" then. *Id.* at 7.

I agree with Defendants that Lantos has not alleged facts demonstrating that the credit reports were inaccurate. The parties' disagreement seemingly originates from their differing understandings about charged-off debts, so my analysis begins with some first principles.

"'Charge off' is a term of art for credit providers, understood as writing off a debt as a loss because payment is unlikely." *Makela v. Experian Info. Sols., Inc.*, No. 6:21-CV-00386-MC, 2021 WL 5149699, at *3 (D. Or. Nov. 4, 2021) (citing *Charge Off*, Black's

---

[7] In addition to bringing claims under § 1681i, Lantos asserts claims under § 1681s-2. Am. Compl. ¶¶26–29. Section 1681s-2 governs the responsibilities of furnishers of information to consumer-reporting agencies. Defendants are consumer-reporting agencies, not furnishers of information, so to the extent that Lantos relies on § 1681s-2, those claims necessarily fail and are accordingly dismissed.

[8] In his amended complaint, Lantos explains that he has "a side issue with Verizon" for allegedly marking his account as being in "collection," which was reflected on his credit report by Experian. Am. Compl. ¶22. Because Lantos does not allege that he paid Verizon, he has not plausibly alleged that Experian's credit report depicting his account as being in "collection" was inaccurate. Thus, insofar as Lantos' claims rely on his "side issue with Verizon" those claims fail.

Law Dictionary (11th ed. 2019)). "Federal regulations require banks to 'charge off' debt that is past due by over 180 days." *In re Anderson*, 884 F.3d 382, 386 n.2 (2d Cir. 2018) (citing Uniform Retail Credit Classification and Account Management Policy, 65 Fed. Reg. 36,903, 36,904 (June 12, 2000)). Otherwise, a bank's "balance sheets would 'misleadingly reflect accounts as assets that have little chance of achieving their full valuation.'" *Makela*, 2021 WL 5149699, at *3 (quoting *Artemov v. TransUnion, LLC*, No. 20-CV-1892 (BMC), 2020 WL 5211068, at *3 (E.D.N.Y. Sept. 1, 2020)). A charged-off debt "has [not] been forgiven; rather, the balance remains on the [debtor's] account." *See In re Jones*, 367 B.R. 564, 566 (Bankr. E.D. Va. 2007). Under the Fair Credit Reporting Act, consumer reporting agencies may not report "[a]ccounts placed for collection or charged to profit and loss which antedate the report by more than seven years." 15 U.S.C. § 1681c(a)(4); *see also id.* § 1681c(c)(1) (explaining when the seven-year period begins for "delinquent account[s] that [are] placed for collection," "charged to profit and loss, or subjected to any similar action").

Because Lantos concedes that he defaulted on his debts, which were later charged off, Defendants did not report false information about Lantos. *See* Compl. ¶¶3, 5 (acknowledging that the debts would be removed from his report around 2027). Thus, Lantos' Fair Credit Reporting Act claims hinge on him pleading that Defendants misleadingly reported his charged-off debts.

Lantos has not plausibly alleged that Defendants misleadingly reported his debts because he has "failed to plead that anyone would believe that [his] account[s] had been charged off more than once." *Steinmetz v. Am. Honda Fin. Corp.*, 835 F. App'x 199, 201

7

(9th Cir. 2020). In response to the Defendants, Lantos argues that their practice of reporting charged-off debts each month in "the payment history portion" is misleading because it "creates the false impression that the derogatory trade line has been re-aged." Resp. at 7–8 (ECF No. 33). I find this argument unpersuasive because "it is unclear how any [reasonable] reader of [someone's] credit report could be misled into believing that multiple charge offs occurred when it is undisputed that a charge off occurs only once." *Makela*, 2021 WL 5149699, at *4; *see also* Resp. at 6 (ECF No. 31) (describing a charge off as "an event that occurs at a definite point in time"). Furthermore, Lantos' "mere speculation" that Defendants' practice is misleading cannot buttress his claim. *Dickens v. Trans Union Corp.*, 18 F. App'x 315, 318 (6th Cir. 2001) (reasoning that the plaintiff's "speculation" that a credit report was misleading was "insufficient as a matter of law to establish a prima facie case of inaccuracy in violation of § 1681e(b)").

In reaching this conclusion, I join "the growing consensus" among the federal courts holding that "repeatedly reporting a delinquent account as charged off is not inaccurate." *Otto v. TransUnion, LLC*, No. 6:21-CV-00379-AA, 2022 WL 787940, at *3 (D. Or. Mar. 15, 2022); *see, e.g.*, *Steinmetz*, 835 F. App'x at 201 ("The report of multiple charge-offs does not support a plausible claim under §§ 1681e(b) and 1681i, because Steinmetz failed to plead that anyone would believe that the account had been charged off more than once."); *Makela*, 2021 WL 5149699, at *4 (rejecting a plaintiff's attempt to distinguish *Steinmetz* based on allegations of how "multiple charge offs adversely affect her credit score" because she did not demonstrate that "Defendants' reporting is either patently incorrect or misleading"); *Nichols v. Credit Union One*, No. 2:17-CV-02337-APGEJY, 2020 WL

8

5821828, at *3 (D. Nev. Sept. 30, 2020) ("There is no evidence that reporting charge-offs on a single tradeline in consecutive months would be 'misleading in such a way and to such an extent that it can be expected to adversely affect credit decisions.'" (quoting *Carvalho v. Equifax Info. Servs., LLC*, 629 F.3d 876, 890 (9th Cir. 2010))); *Barakat v. Equifax Info. Servs., LLC*, No. 16-10718, 2017 WL 3720439, at *3 (E.D. Mich. Aug. 29, 2017) (granting summary judgment to the defendants when the plaintiff "provided no authority supporting his speculative opinion" that repeatedly listing a charge-off debt on his credit report was misleading). *But see Harroff v. Experian Info. Servs., Inc.*, No. 2:18-CV-2154-KJD-GWF, 2019 WL 4168729, at *4 (D. Nev. Sept. 3, 2019) (reasoning that "it is at least plausible that the appearance of multiple charge-offs on a consumer report could cause a prospective creditor to deny Harroff credit when faced with multiple—as opposed to one singular—charge-off," so Harroff stated a plausible claim under § 1681e(b)).

Having concluded that Defendants' credit files were not inaccurate, I dismiss Lantos' claims under the Fair Credit Reporting Act. I next turn to Lantos' related claim under the Maine Unfair Trade Practices Act.

**B. Maine Unfair Trade Practices Act**

The Maine Unfair Trade Practices Act ("UTPA") prohibits "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce." 5 M.R.S. § 207. "UTPA does not contain a definition of either the term 'unfair' or 'deceptive.'" *State v. Weinschenk*, 868 A.2d 200, 206 (Me. 2005). The Maine Supreme Judicial Court (the "Law Court") instructs that the "[d]etermination of whether an act or practice is 'unfair or deceptive' in violation of the UTPA must be made by the

9

fact-finder on a case-by-case basis." *Id.* (citing *Binette v. Dyer Libr. Ass'n*, 688 A.2d 898, 906 (Me. 1996)). UPTA provides that it "is the intent of the Legislature that in construing this section the courts will be guided by the interpretations given by the Federal Trade Commission and the Federal Courts to Section 45(a)(1) of the Federal Trade Commission Act." 5 M.R.S. § 207(1). Drawing on these federal sources, the Law Court has explained that an act or practice "is deceptive if it is a material representation, omission, act or practice that is likely to mislead consumers acting reasonably under the circumstances." *Weinschenk*, 868 A.2d at 206 (citing *In re Cliffdale Assocs., Inc.*, 103 F.T.C. 110, 164–65 (1984)); *see also id.* ("A material representation, omission, act or practice 'involves information that is important to consumers and, hence, likely to affect their choice of, or conduct regarding, a product.'" (quoting *In re Cliffdale Assocs., Inc.*, 103 F.T.C. at 165)). An act or practice is unfair if an injury is "substantial;" not "outweighed by any countervailing benefits to consumers or competition that the practice produces; and it must be an injury that consumers themselves could not reasonably have avoided." *Suminski v. Maine Appliance Warehouse, Inc.*, 602 A.2d 1173, 1174 n.1 (Me. 1992).

Lantos' UTPA claim is seemingly premised on his arguments concerning how Defendants repeatedly report charged-off debts each month. *See* Am. Compl. ¶32. Defendants maintain that their credit files were accurate and not misleading, so they necessarily did not engage in unfair or deceptive acts or practices.[9]

---

[9] Alternatively, Experian argues Lantos' UTPA claim should be dismissed because he has failed to allege "that Experian has advertised or sold any services that pertain to him." Experian's Mot. to Dismiss, ECF No. 25 at 14. I express no opinion on this argument.

10

Lantos has failed to state a plausible UTPA claim. Based on Lantos' admission that he defaulted on his debts, which were later charged off, I conclude that Defendants did not engage in an unfair or deceptive act or practice by reporting these debts each month. There are important "countervailing benefits to consumers" from reporting that someone has defaulted on a debt, even after it has been charged off, since that person is less creditworthy. *Suminski*, 602 A.2d at 1174 n.1. Moreover, having a debt noted as charged-off on one's credit report is a foreseeable (and avoidable) consequence of defaulting on debt. Lantos has failed to make a colorable showing that Defendants' reporting practice is deceptive because he acknowledges that debts are charged off once, and he has not plausibly alleged that anyone would misunderstand the charged-off debts on his credit report. *See Weinschenk*, 868 A.2d at 206.

Because Lantos has not plausibly alleged that Defendants engaged in an unfair or deceptive act or practice, I dismiss Lantos' UTPA claims. I now address Lantos' intentional infliction of emotional distress claims.

## C. Intentional Infliction of Emotional Distress

An intentional infliction of emotional distress claim requires the plaintiff to plead (1) that the defendant "intentionally or recklessly inflicted severe emotional distress or was certain or substantially certain that such distress would result;" (2) "the conduct was so extreme and outrageous as to exceed all possible bounds of decency and must be regarded as atrocious, utterly intolerable in a civilized community;" (3) "the actions of the defendant caused the plaintiff's emotional distress;" and (4) "the emotional distress suffered by the plaintiff was so severe that no reasonable person could be expected to endure it." *Lyman*

11

*v. Huber*, 10 A.3d 707, 711 (Me. 2010) (quoting *Curtis v. Porter*, 784 A.2d 18, 24 (Me. 2001)).

Defendants aver that Lantos has failed to state a claim because his allegations fall short of establishing that Defendants engaged in extreme and outrageous conduct or that he suffered severe emotional distress that no reasonable person is expected to endure.

Defendants correctly identify why Lantos has failed to state plausible intentional infliction of emotional distress claims. With Lantos having defaulted on his loans, nothing about the Defendants' "conduct was so extreme and outrageous as to exceed all possible bounds of decency." *Id.*; *see also Argereow v. Weisberg*, 195 A.3d 1210, 1219 (Me. 2018) (holding that the plaintiff's allegation that her employer acted on a report stating that she was professionally incompetent by encouraging her to withdraw her employment application was not sufficiently outrageous). While Lantos pleads that he has suffered emotional and mental pain because of his credit reports, his emotional distress cannot be characterized as "so severe that no reasonable person could be expected to endure it." *Curtis*, 784 A.2d at 24; *see also Argereow*, 195 A.3d at 1219 (holding that the plaintiff's allegations of "lost wages and a strained marriage that led to counseling" were not sufficiently severe allegations of emotional distress).

Since Lantos has failed to state plausible intentional infliction of emotional distress claims, I also dismiss these claims. I now consider Lantos' remaining claims.

**D. Defamation, Negligence, Intrusion upon Seclusion, and Negligent Infliction of Emotional Distress**

Defendants argue that Lantos' defamation, negligence, and intrusion upon seclusion claims are preempted. Additionally, Equifax and Trans Union argue that Lantos' negligent infliction of emotional distress claims are preempted. Defendants argue that these claims are expressly preempted by the Fair Credit Reporting Act, which provides:

> Except as provided in sections 1681n and 1681o of this title, no consumer may bring any action or proceeding in the nature of defamation, invasion of privacy, or negligence with respect to the reporting of information against any consumer reporting agency, any user of information, or any person who furnishes information to a consumer reporting agency, based on information disclosed pursuant to section 1681g, 1681h, or 1681m of this title, or based on information disclosed by a user of a consumer report to or for a consumer against whom the user has taken adverse action, based in whole or in part on the report[,] except as to false information furnished with malice or willful intent to injure such consumer.

15 U.S.C. § 1681h(e).

Given the clear statutory language above, Defendants argue that Lantos' defamation, negligence, and intrusion upon seclusion claims fail because he has not plausibly alleged that Defendants furnished false information and acted with malice or willful intent to injure him. In response, Lantos maintains that Defendants are furnishing credit reports with false information concerning his charge-off debts, demonstrating that Defendants acted with a malicious intent.

Under the Supremacy Clause, "federal law is the 'supreme Law of the Land.'" *Tobin v. Fed. Exp. Corp.*, 775 F.3d 448, 452 (1st Cir. 2014) (quoting U.S. Const. art. VI, cl. 2.). When "congressional intent to preempt state law is made explicit in the language of a federal statute," state law is expressly preempted. *Id.*

Section 1681h(e) expressly preempts Lantos' four tort claims unless he plead that Defendants furnished "false information with malice or willful intent to injure" him. Having conceded that he defaulted on debts that were later charged off, Lantos cannot demonstrate that Defendants reported false information, as explained above. Furthermore, his arguments that Defendants acted with malice or willful intent to injure him are patently implausible. Thus, Lantos' defamation, negligence, and intrusion upon seclusion claims are expressly preempted, and I dismiss those claims as to all Defendants. Lantos' negligent infliction of emotional distress claims are also preempted and are dismissed as to Equifax and Trans Union.

Instead of relying on the preemption provision, Experian argues that Lantos' negligent infliction of emotional distress claim should be dismissed because he fails to state a plausible claim. To plead a negligent infliction of emotional distress claim, a plaintiff must plead that "(1) the defendant owed a duty to the plaintiff; (2) the defendant breached that duty; (3) the plaintiff was harmed; and (4) the breach caused the plaintiff's harm." *Curtis*, 784 A.2d at 25. While these elements seemingly overlap with an ordinary negligence tort, the Law Court has explained that a defendant's "duty to act reasonably to avoid emotional harm" is confined to "very limited circumstances," such as "bystander liability actions" and when there is a "special relationship" "between the actor and the person emotionally harmed." *Id.* When there is an independent tort claim, plaintiffs may generally recover for their emotional distress. *See id.* at 26.

Experian maintains that Lantos has failed to state a plausible negligent infliction of emotional distress claim because his claim falls outside of the limited set of circumstances in which the Law Court has permitted such claims.

Lantos has failed to state a plausible claim because Experian and Lantos did not have a special relationship that imposed a duty on Experian. *See Rowe v. Bennett*, 514 A.2d 802, 807 (Me. 1986) (holding that a patient and a therapist have a special relationship because "the patient is extremely vulnerable to mental harm if the therapist fails to adhere to the standards of care recognized by the profession"). Thus, I dismiss Lantos' final claim against Experian.

## CONCLUSION

Because Lantos has failed to state plausible claims, Equifax's Motion to Dismiss (ECF No. 11); Trans Union's Motion to Dismiss (ECF No. 25); and Experian's Motion to Dismiss (ECF No. 28) are **GRANTED**.[10]  Thus, Lantos' claims are **DISMISSED**.

SO ORDERED.

Dated this 26th day of February, 2024.

                                       /s/ Lance E. Walker
                                       UNITED STATES DISTRICT JUDGE

---

[10] Equifax and Trans Union's request for attorney's fees is denied.